# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

## DOCKET NUMBER
## 2022 CA 0738

## PONTCHARTRAIN NATURAL GAS SYSTEM, K/D/S PROMIX, L.L.C., AND ACADIAN GAS PIPELINE SYSTEM

## VERSUS

## TEXAS BRINE COMPANY, LLC

Judgment Rendered: **DEC 2 9 2022**

* * * *

**On Appeal from
the 23rd Judicial District Court, Division B
Assumption Parish, Louisiana
Docket Number 34,265**

**Honorable Thomas J. Kliebert, Jr., Presiding Ad Hoc Judge**

* * * *

James M. Garner
Leopold Z. Sher
Peter L. Hilbert, Jr.
Christopher T. Chocheles
New Orleans, Louisiana

Travis J. Turner
Gonzales, Louisiana

Ulysses Gene Thibodeaux
Lake Charles, Louisiana

Attorneys for Appellant
Texas Brine Company, LLC

Roy C. Cheatwood
Kent A. Lambert
Adam B. Zuckerman
Colleen C. Jarrott
Matthew C. Juneau
Leopoldo J. Yanez
Lauren Brink Adams
New Orleans, Louisiana

Attorneys for Appellee
Legacy Vulcan, LLC

**BEFORE: McDONALD, WELCH, and HOLDRIDGE, JJ.**

Holdridge J., concurs w/ reasons

**McDONALD, J.**

This dispute is one of many arising out of the August 3, 2012 sinkhole that appeared near Bayou Corne in Assumption Parish, Louisiana. In this appeal, Texas Brine Company, LLC challenges a partial summary judgment dismissing its contractual claims against Legacy Vulcan, LLC[1] under an Amended Operating Agreement between the parties. After review, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In brief, the relevant history between Texas Brine and Legacy Vulcan dates back to 1975, when Texas Brine, by way of a "Salt Lease," secured the right to produce salt from a 40-acre tract of land in Assumption Parish, commonly referenced by the parties as the "North 40." Within a year of obtaining this right, Texas Brine entered into a series of interdependent contracts with Legacy Vulcan, including an "Assignment of Salt Lease" (Assignment of Salt Lease), under which Texas Brine purportedly assigned all of its rights, title, and interest as lessee in and under the Salt Lease to Legacy Vulcan, and Legacy Vulcan assumed all obligations of Texas Brine as lessee in and under the Salt Lease; a "Construction Contract and Facilities Lease" (Facilities Lease), under which Texas Brine was to site, drill, and construct certain wells, related facilities, and a pipeline on the North 40 and lease certain property to Legacy Vulcan; and, an "Operating and Supply Agreement" (Operating Agreement), under which Texas Brine would operate facilities it constructed on the North 40 in order to produce and deliver a certain quantity and quality of brine to be used by Legacy Vulcan in its chloralkali business at its facility in Geismar, Louisiana. The Operating Agreement further provided that Texas Brine maintain, repair, and at all times, keep the facilities leased by it to Legacy Vulcan in good and safe operating condition. In turn, Legacy Vulcan was obligated to pay Texas Brine for its services. Each of the above agreements provided certain other specific rights to and obligations owed by the parties.

Around 2000, Texas Brine and Legacy Vulcan entered into the "First Amendment to the Salt Lease," "Amendment to Construction Contract and Facilities Lease"

---

[1] Legacy Vulcan, LLC was previously known as Vulcan Materials Company; we will reference it as Legacy Vulcan in this opinion.

(Amended Facilities Lease), and "Amended and Restated Operating and Supply Agreement" (Amended Operating Agreement), each contract dependent upon the other contracts, for the purpose of continuing the brine mining and exploration on the North 40. The general principles underlying the Amended Operating Agreement remained the same - Texas Brine would operate on the North 40 to produce and deliver certain quantities and qualities of brine to Legacy Vulcan. Texas Brine further obligated itself to maintain, repair, and at all times, keep these facilities in good and safe operating condition, and comply with, perform, and fulfill all obligations of Legacy Vulcan to Texas Brine under the Amended Facilities Lease between the parties, with respect to the maintenance, operation, and preservation of the leased premises. Legacy Vulcan, in turn, obligated itself to pay for Texas Brine's services. Changes or additions made to the Amended Operating Agreement included giving Legacy Vulcan the right to double the amount of salt Texas Brine produced and delivered to Legacy Vulcan, as well as Texas Brine separately and again obligating itself to ensure that Legacy Vulcan was compliant with its obligations under the Amended Facilities Lease. Pertinent to this appeal, the Amended Operating Agreement also contained an indemnification clause, which provided, in part:

> Texas [Brine] and [Legacy] Vulcan shall each pay one-half of all losses and all claims, demands, payments, suits, actions, recoveries, and judgments ... of every nature and description, brought, recovered or arising out of the joint and concurring negligence of the parties.

Following the sinkhole's emergence, multiple plaintiffs filed numerous lawsuits against Texas Brine, all of whom suffered damages due to the sinkhole. Texas Brine, in turn, asserted numerous third party demands against Legacy Vulcan, including breach of contract claims. Specifically, regarding the Amended Operating Agreement, Texas Brine asserted that Legacy Vulcan failed to perform this contract in good faith. In its Third Amended Incidental Demands, Texas Brine alleged that the Amended Operating Agreement contained an indemnification clause, and therefore, to the extent that the acts and omissions of Legacy Vulcan contributed to the formation of the sinkhole, Legacy Vulcan was obligated to indemnify Texas Brine.

3

The Phase 1 liability trial was held in September and October 2017, for the purpose of determining what caused the sinkhole to form and which parties were at fault under any theory of law for causing the formation of the sinkhole. *See* Pontchartrain, 317 So.3d at 724. The trial court found both Texas Brine and Legacy Vulcan at fault. This court affirmed the judgment on appeal, finding that Legacy Vulcan failed to act as a prudent mineral lessee, and Texas Brine failed to prudently operate on the North 40. *Pontchartrain Natural Gas System v. Texas Brine Company, LLC*, 18-1249 (La. App. 1 Cir. 12/30/20), 317 So.3d 715, 757-58, *writs denied*, 21-00382, 21-00386 (La. 6/8/21), 317 So.3d 323.

Thereafter, the parties began the next phase of this litigation, which encompassed all remaining incidental demands and damage/quantum issues, but not including insurance issues or attorney's fees. To that end, Legacy Vulcan filed numerous partial motions for summary judgment asserting various arguments regarding Texas Brine's contractual claims against Legacy Vulcan. One such motion was Legacy Vulcan's motion for partial summary judgment seeking to dismiss Texas Brine's claims under the Amended Operating Agreement. First, Legacy Vulcan argued that Texas Brine could not prove Legacy Vulcan breached the Amended Operating Agreement. Alternatively, Legacy Vulcan argued that, because Texas Brine breached the Amended Operating Agreement by failing to act as a prudent operator, citing *Pontchartrain*, 317 So.3d at 758-59, it was barred, under Louisiana Civil Code article 1993, from demanding performance from Legacy Vulcan under the Amended Operating Agreement.

Texas Brine opposed the motion, asserting numerous arguments, including: Legacy Vulcan did breach the Amended Operating Agreement by its negligence in thinning the walls of the salt cavern, citing *Pontchartrain*, 317 So.3d at 756-57; Legacy Vulcan breached its duty to perform the Amended Operating Agreement in good faith; La. C.C. art. 1993 was inapplicable; and, the Amended Operating Agreement's indemnification clause was an independent clause that could survive, despite any breach of the Amended Operating Agreement.

The trial court held a hearing on this motion, along with several others, on December 16, 2021. Following the parties' arguments and submission of evidence, the

4

trial court took the matter under advisement. On January 18, 2022, the trial court signed a judgment, stating:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that [Legacy] Vulcan's Motion for Partial Summary Judgment Dismissing Texas Brine's Claims Under the Amended Operating Agreement is **GRANTED,** and Texas Brine's claims against [Legacy] Vulcan under the Amended Operating Agreement are **DISMISSED WITH PREJUDICE.**
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Judgment is designated as a final judgment in accordance with Louisiana Civil Code Article 1915, as the Court finds that there is no just reason for delay.

## ASSIGNMENTS OF ERROR

Texas Brine appeals from the adverse judgment, contending the trial court erred in essentially rewriting the Amended Operating Agreement by disregarding the parties' contractual indemnity provision that allocated tort liability in the event of joint and concurring negligence. Texas Brine further contends the trial court erred in granting summary judgment, because genuine issues of material fact exist regarding whether Legacy Vulcan agreed to reimburse Texas Brine under the Amended Operating Agreement for Texas Brine's costs and expenses incurred in connection with Texas Brine's operation of the Oxy Geismar No. 3 well.

## APPEALABILITY OF PARTIAL SUMMARY JUDGMENT

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte,* even when the parties do not raise the issue. *See Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.,* 17-1250 (La. App. 1 Cir. 12/20/18), 268 So.3d 1044, 1046 *(en banc).* This court's appellate jurisdiction extends only to "final judgments." *See* La. C.C.P. art. 2083(A).

A trial court may render a partial summary judgment dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor or one or more parties, even though the grant of summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966(E); *Elee v. White,* 19-1633 (La. App. 1 Cir. 7/24/20), ___ So.3d ___, ___, 2020 WL 4251974, at *2, *writ denied,* 20-01048 (La. 11/10/20), 303 So.3d 1038. A partial summary judgment rendered under La. C.C.P. art. 966(E) may be immediately appealed during ongoing litigation only if the trial court

has properly designated it as a final judgment. *See* La. C.C.P. art. 1915(B)(1). However, this court's jurisdiction is not determined by a trial court's certification of a partial summary judgment as final under La. C.C.P. art. 1915(B). *Hernandez v. Excel Contractors, Inc.*, 18-1091 (La. App. 1 Cir. 3/13/19), 275 So.3d 278, 285. If the trial court gives no reasons for the certification, but some justification is apparent from the record, the appellate court should make a *de novo* determination of whether the certification was proper. *R.J. Messinger, Inc. v. Rosenblum*, 04-1664 (La. 3/2/05), 894 So.2d 1113, 1122; *Asay v. Safeco Ins. Co. of Oregon*, 20-0852 (La. App. 1 Cir. 4/16/21), 323 So.3d 395, 398. Under *Messinger*, the following list of non-exclusive factors are to be considered in determining whether a partial judgment should be certified as final: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Messinger*, 894 So.2d at 1122; *Asay*, 323 So.3d at 399. Further, in determining whether a partial judgment is final for purposes of an immediate appeal, a court must always keep in mind the historic policy against piecemeal appeals. *Messinger*, 894 So.2d at 1122; *Crown Oilfield Services, Inc. v. La. Oilfield Contractors Ass'n Ins. Fund*, 13-0394 (La. App. 1 Cir. 2/19/14), 2014 WL 3533482, at *3 (unpublished).

Applying these precepts on *de novo* review, we conclude the January 18, 2022 partial summary judgment does not meet the requirements of an appealable final judgment under La. C.C.P. art. 1915(B). Any decision by this court on the limited claims at issue on appeal, *i.e.*, Texas Brine's breach of the Amended Operating Agreement claims against Legacy Vulcan, without consideration of the remaining interdependent contracts and claims thereupon, would merely result in inefficient, piecemeal, and possibly conflicting resolution of only a minor part of the parties' related contract claims. *See* La. C.C.P. art. 2053 ("A doubtful provision [in a contract] must be interpreted in light of the nature of the contract, equity, usages, the conduct of the

6

parties before and after the formation of the contract, *and of other contracts of a like nature between the same parties.*") (Emphasis added.)

This court is aware that the parties have chosen this particular method of litigation to dispose of their remaining claims, and the trial court is attempting to proceed in this case as efficiently as possible at this juncture. However, this court does not believe that interpreting the parties' interrelated contracts in a disjointed manner, after their interdependence has been established, is efficient or equitable, despite the parties' contentions. *See Pontchartrain Natural Gas System*, 317 So.3d at 725-26; *cf. Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC*, 21-1267, 22-0004 (La. App. 1 Cir. 8/3/22), 348 So.3d 93 (addressing how the sole issue of confusion affected four interdependent contracts).

Accordingly, having found the January 18, 2022 judgment does not meet the requirements of a final appealable judgment under *Messinger*, we lack subject matter jurisdiction herein and dismiss the appeal.

## CONCLUSION

For the above reasons, we dismiss this appeal and remand this matter to the trial court for further proceedings consistent with this opinion. We assess appeal costs equally between Texas Brine Company, LLC and Legacy Vulcan, LLC.

**APPEAL DISMISSED; CASE REMANDED.**[2]

---

[2] This court also: (1) grants Legacy Vulcan's motion for oral argument; and, (2) grants Texas Brine's motion to withdraw James E. Kuhn as its counsel of record.

PONTCHARTRAIN NATURAL
GAS SYSTEM, K/D/S PROMIX,
L.L.C., AND ACADIAN GAS
PIPELINE SYSTEM

VERSUS

TEXAS BRINE COMPANY, LLC

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0738



**HOLDRIDGE, J., concurs.**

I respectfully concur with the report. I further write to emphasize that the basis of the current appeal arises out of an August 2012 sinkhole in Assumption Parish. A large number of writs and appeals have been filed with this court many times arguing that the procedure used by the trial court and agreed upon by the parties was the most cost-efficient and expedient method of disposing of the many claims and lawsuits that are based on the 2012 sinkhole. Over ten years have passed since the sinkhole occurred. It is clear that the parties and the trial court were not correct. This matter has evolved into a lengthy and time-consuming litigation in which millions of dollars of litigation expenses have been expended, as well as countless hours of judicial time and effort, in both the trial and appellate courts. The Louisiana Supreme Court case R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122, would allow this court to enforce the policy against multiple appeals and piecemeal litigation that have been the hallmark of the 2012 Assumption Parish sinkhole litigation. It also would ensure that this court, as well as the trial court, would operate under the principle of sound judicial administration to promote judicial efficiency and economy, neither of which have been present in this litigation.